UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
S. KATZMAN PRODUCE, INC., and
KATZMAN BERRY CORP.

         *Plaintiffs,*

-*against*-

         18 Civ. 6947 (PAC)

OREL PRODUCE, INC. T/A MOSES,
ELIRAN YADID AND MOSHE YADID,

         **OPINION & ORDER**

         *Defendants.*

---------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs are produce dealers who sold wholesale quantities of perishable agricultural commodities to Defendant Orel Produce, Inc. T/A Moses ("Orel" or "the Company") from February, 2018 through July, 2018 for which they never received full payment. Individual Defendant Moshe Yadid ("M. Yadid") is the owner of Orel and Eliran Yadid ("E. Yadid") is his son. Plaintiffs filed this action against all three Defendants alleging violations of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.* ("PACA") and breach of contract for Defendants' alleged failure to make payment.

Plaintiffs now move for summary judgment, pursuant to Fed. R. Civ. P. 56(c), and ask the Court to enter an order directing entry of judgment against all Defendants, jointly and severally, in the principal amount of $473,268.82,[1] plus accrued interest at the rate of 18% *per annum* and attorneys' fees incurred by Plaintiffs up to and including the date of entry of judgment. Defendants dispute only the personal liability of Defendant Eliran Yadid and Plaintiffs' computation of

---

[1] Plaintiffs initially requested $494,897.00 but, upon Defendants' objection, reduced this amount to account for their subsequent successful collection efforts on Orel's accounts receivables. (*See generally* Brown Rep. Decl, Dkt. 33).

damages. The Court GRANTS Plaintiffs' motion.

## BACKGROUND

At all times relevant to this action, Plaintiff S. Katzman Produce, Inc. ("Katzman Produce") and Plaintiff Katzman Berry Corp. ("Katzman Berry") (Katzman Produce and Katzman Berry collectively, "Plaintiffs") were licensed dealers under PACA who bought and sold wholesale quantities of perishable agricultural commodities in interstate commerce. (Pl.'s Exs. C & D, Dkt. 19). Defendant Orel was a wholesale distributor of fruits and vegetables to restaurants, grocery stores, catering halls and other venues, mainly in Manhattan, Brooklyn and Nassau County. (E. Yadid Decl., Dkt. 25, ¶ 5). Orel ceased operations in the summer of 2018. (*Id.* ¶ 21).

Outstanding Balance & Attorneys' Fees

Between February 16, 2018 and July 27, 2018, Orel accepted wholesale quantities of produce worth $502,146 from Katzman Produce and wholesale quantities of produce worth $14,833 from Katzman Berry. (Allen Decl. ¶¶ 9-10; Pls.' Ex. F.) At the time this lawsuit commenced, Orel owed Plaintiffs $494,897 on two invoices from those transactions. (Allen Decl. ¶ 11; Pls.' Ex. F). Plaintiffs have since collected an additional $21,628.18 on Orel's receivables, reducing the principal balance Orel owes to $473,268.82 (*See* Brown Rep. Decl., Dkt. 33, ¶ 9). As of January 31, 2019, Plaintiffs had also incurred $30,139.75 in attorneys' fees and expenses in connection with their efforts to collect on this debt. (Brown Decl., Dkt. 21, ¶ 5).

M. Yadid and E. Yadid

Moshe Yadid ("M. Yadid") formed Orel in December 2010 and was, at all times relevant to this action, the Company's sole officer and shareholder. (E. Yadid Decl. ¶¶ 9-10; Pl.'s Ex. N). His son, E. Yadid, worked part-time at Orel on and off from 2011 until the Company ceased operations in the summer of 2018. (E. Yadid Decl. ¶ 21). During those times, E. Yadid was a

salaried employee who never received any profits, dividends or other distributions from the Company. (*Id.* ¶¶ 4, 40). E. Yadid's primary responsibilities were running errands and handling administrative tasks, such as opening the mail and making deposits. (*Id.* ¶ 16). He also occasionally served as an interpreter for his father, whose English proficiency is limited. (*Id.* ¶ 13). In around 2016 or 2017, E. Yadid was also added as a signatory on the Orel checking account which enabled him to sign checks on behalf of the Company when his father was unavailable. (*Id.* ¶¶ 31-34; Pl.'s Ex. J). He subsequently wrote and signed checks on behalf of Orel to himself for his weekly salary, and to others. (*Id.* ¶¶ 35-40; Pl.'s Exs. J & K). E. Yadid also once wrote that he was the "owner" of Orel on a truck lease agreement and provided a personal guaranty on the loan, along with his father. (Pl.'s Ex. O).

While Plaintiffs' chief contact at Orel was M. Yadid, E. Yadid occasionally attended meetings with Plaintiffs in his role as interpreter for his father. (E. Yadid Decl. ¶¶ 13, 52-53). From at least April, 2018, through July, 2018, E. Yadid also communicated directly with Plaintiffs' controller regarding Orel's late and overdue payments and the Company's efforts to secure a loan. (*See* Allen Rep. Decl. Ex. D). On at least one occasion, E. Yadid met with Plaintiffs without his father present to discuss Orel's financial situation. (Allen Rep. Decl. ¶ 7; Allen Rep. Decl. Ex. D).

Less than a week before Plaintiffs filed this action, on July 27, 2018, $40,000 was transferred from the Orel checking account into E. Yadid's personal account. (Pl.'s Ex. M). E. Yadid does not use this money unless directed to do so by his father, who does not have his own bank account. (E. Yadid Decl. ¶¶ 45-46). M. Yadid has since directed E. Yadid to pull from those funds to make rent and car payments, and to make payments due from Orel, such as truck payments. (*Id.* ¶ 48).

3

# DISCUSSION

## I. Summary Judgment Standard

Summary judgment is appropriate where the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the moving party to establish the lack of any factual issues. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made an initial showing that no genuine issue of material fact remains, the nonmoving party may not refute this showing solely by means of "[c]onclusory allegations, conjecture, and speculation," *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotations omitted), but must instead present specific evidence in support of its contention that there is a genuine dispute as to material facts. Fed. R. Civ. P. 56(e). The Court resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. Liability

### A. PACA

PACA was enacted in 1930 "to suppress unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce," 49 Fed. Reg. 45737, and requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499b(4). Congress amended PACA in 1984 by creating a statutory trust in Section 499e to "increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities until full payment of sums due have been received by them." H. R. Rep. No. 543,

4

98th Cong., 1st Sess. 3 (1983), *reprinted* in 1984 U.S.C.C.A.N. 405, 406. The trust provisions require a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, and any receivables or proceeds from the sale thereof, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996). Failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful and can subject produce dealers to civil and administrative penalties. *See* 7 U.S.C. § 499b(4); § 499e(b).

> The proponent of a clam for violation of the PACA trust must demonstrate:
>
> (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.

*A&J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005) (citing 7 U.S.C. § 499e).

It is well settled that under PACA, "individuals in a position to control trust assets who breached their fiduciary duties may be held secondarily liable for whatever amount of the debt is not recoverable from the corporation." *John the Greek Co. v. Eaternity LLC*, 233 F. Supp. 3d 355, 359 (E.D.N.Y. 2017) (quoting *Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.*, No. 04 CIV.2666(GBD)(AJP, 2005 WL 1149774, at *5 (S.D.N.Y. May 16, 2005)). Specifically, individual liability can attach to anyone "who is in a position to control the assets of a PACA trust and fails to preserve those assets." *Id.* "[I]individual liability turns not on whether the individual nominally held an officer position nor even the size of his or her shareholding, but whether he or she had the authority to direct the control of the PACA trust assets." *Dimare Ruskin, Inc. v. M & M Produce, Inc.*, No. 3:15-CV-00289(AWT), 2016 WL 8115364, at *1 (D. Conn. Aug. 24, 2016).

### 1. Orel

There is no dispute here as to any of the PACA trust elements regarding Orel. Defendants concede Orel's liability and the record supports it. (*See* Pl.'s Exs. C & D (invoices demonstrating Orel engaged in the purchase of "perishable agricultural commodities" as defined in 7 U.S.C. § 499a(b)( 4)); Allen Decl. ¶ 14 (Defendants purchased in excess of 27,000 pounds of produce in a single day and regularly purchased similar volumes of produce); Pl.'s Ex. G (same); Allen Decl. ¶ 15 (Orel received products in interstate commerce); Pl.'s Ex. C & D (same); Allen Decl. ¶ 11 (Orel failed to pay for at least some of the invoice amounts in Pl.'s Exs. C & D); Pl.'s Exs. C & D (the language required under PACA to preserve Plaintiffs' trust rights included on each invoice)).

Accordingly, Plaintiffs' motion for summary judgment as to Orel's liability under PACA is GRANTED.

### 2. M. Yadid

M. Yadid's individual liability in this action is also undisputed and supported by the record. (*See* Def.'s Part. Opp., Dkt. 26, at 3; Answer, Dkt. 13, ¶ 15; Pl.'s Ex. N.) M. Yadid was Orel' sole owner, officer and shareholder and clearly had the "authority to direct the control of the PACA trust assets." *See, e.g., Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, 07–80633–CV, 2010 WL 1410558, at *7 (S.D.Fla. Mar. 31, 2010). Plaintiffs' motion regarding Defendant M. Yadid's individual liability under PACA is GRANTED.

### 3. E. Yadid

Defendants contest E. Yadid's individual liability, but they fail to rebut the overwhelming evidence submitted by Plaintiffs demonstrating E. Yadid's authority to direct control of Orel's assets.

The record establishes that E. Yadid had check signing authority for Orel (Pls.' Ex. H),

6

signed checks payable to Orel' produce suppliers (Pls.' Ex. J), paid himself a weekly salary (Pls.' K), withdrew cash from Orel' bank accounts (Pls.' Ex. L), made distributions to himself using PACA trust funds in Orel' bank accounts (Pls.' Ex. M), and described himself as an "owner" of Orel on a truck loan application and personally guaranteed the truck loan debt. (Pls.' Ex. O). The record also establishes that for at least three months in 2018, presumably as Orel's debt began to mount, E. Yadid maintained near-daily text message contact with Plaintiffs' controller as he attempted to work out Orel's debts. (Brown Rep. Decl., Ex. D).

Beyond their frequency, E. Yadid's messages with Plaintiff's controller also reveal his intimate knowledge and decision-making authority regarding Orel's finances. E. Yadid knew when checks drawn on Orel's accounts were likely to clear and when funds received by Orel would become available. (*See* Allen Rep. Decl. ¶ 6). He also participated in meetings on behalf of Orel, without his father present, to make financial arrangements for the Company, (*id.* ¶ 7) and applied for a loan on behalf of Orel, overseeing the distribution of the loan proceeds (*Id.* ¶ 8). The messages further show E. Yadid seeking copies of Plaintiffs' invoices (which contained the PACA trust language), taking part in the collection of Orel's accounts' receivable, and regularly conducting financial transactions from Orel's bank accounts, including over his mobile phone. (*Id.* ¶ 9).

To rebut this overwhelming showing of E. Yadid's authority and control, Defendants were required to set forth specific facts challenging Plaintiffs' *prima facie* case. Fed. R. Civ. P. 56(c)(1). Defendants' evidence, a sworn declaration by E. Yadid and two incomplete portions of Orel's tax returns from 2016 and 2017, fails to do this. Although the 2016 and 2017 tax returns demonstrate that E. Yadid did not have stock or formal interest in Orel, this fact is not material to the PACA control inquiry. *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.*, 819 F. Supp. 209, 213

(E.D.N.Y. 1993) (imposing liability on non-shareholder and denying summary against 100% shareholder who exercised no control over company's affairs).

E. Yadid's declaration, riddled with "conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd v. Fed. Express Corp.*, 247 F.3d 423,428 (2d Cir. 2001), fares no better. E. Yadid's conclusory statement that he "was not permitted to make any financial decisions, and [] did not do so" (E. Yadid Decl. ¶ 41) does not rebut the overwhelming contrary evidence showing his near-daily management of Orel's bank accounts and finances, dating back to at least April 2018.[2] Similarly, although E. Yadid states that he was only present at meetings with Plaintiffs in his capacity as his father's interpreter, (*id.* ¶¶ 13, 52-53), this statement is contradicted by text messages he sent on May 21, 2018 and May 22, 2018 which show him coordinating to meet with Plaintiffs on his own. (Brown Rep. Decl. ¶ 7; *Id.* Ex. D). E. Yadid's effort to justify calling himself Orel's owner on a truck leasing agreement as erroneous and "not accurate," (E. Yadid Decl. ¶ 43), is similarly unsupported by anything in the record.

Distractions aside, the key facts demonstrating E. Yadid's control over the PACA assets remain uncontested. There is no dispute that E. Yadid received a salary from Orel, (E. Yadid Decl. ¶ 4), had check signing authority on Orel's bank accounts (*id.* ¶ 31), authorized cash withdrawals and electronic transfers from those accounts (*id.* ¶ 34-39; *accord* Allen Rep. Decl. ¶ 9), or that he described himself as Orel's owner and personally guaranteed Orel's debt (E. Yadid Decl. ¶ 42). Courts in this Circuit have consistently found such evidence sufficient to impose individual liability under PACA. *See, e.g., A & J Produce Corp. v. Borough Park Food Mart LLC*, No. 17-

---

[2] E. Yadid also attributes his alleged lack of authority at Orel to his history of mental illness. (*See, e.g.*, E. Yadid Decl. ¶¶ 22, 25). Although unsupported by evidence other than E. Yadid's own statement, the Court accepts this fact as true but finds it immaterial. E. Yadid states that by late 2016 or early 2017 he was "compliant with treatment and [his] condition had improved." (*Id.* ¶ 29). The delinquent payments in this lawsuit arise from deliveries made in 2018. There is no evidence that E. Yadid's mental health continued to debilitate him during the relevant time period and, on the contrary, his authority at Orel appears to have increased substantially.

CV-2337 (JPO), 2018 WL 566458, at *3 (S.D.N.Y. Jan. 25, 2018) (individual liability found where defendants had check-signing authority and personally guaranteed the company's invoices); *DiMare Homestead, Inc. v. Alphas Co. of New York*, No. 09 CIV. 6644 PKC, 2012 WL 1155133, at *14 (S.D.N.Y. Apr. 5, 2012) (individual liability found where defendants were signatories on corporate bank accounts); *Mid-Valley Produce Corp.*, 819 F. Supp. at 212) (individual liability found where defendant drew a salary and signed checks on behalf of the company for a loan repayment).[3]

Accordingly, Plaintiffs' motion as to E. Yadid's individual liability under PACA is GRANTED.

### B. Breach of Contract, Attorney's Fees & Interest

To state a claim for breach of contract, a plaintiff must establish "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). Invoices between merchants for the sale of goods constitute contracts and "inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract." *Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc.*, No. 04 CIV.2666(GBD)(AJP, 2005 WL 1149774, at *3 (S.D.N.Y. May 16, 2005) (citing N.Y. U.C.C. § 2-201(2)).

Plaintiffs' invoices to Defendants provide for the recovery of interest at the rate of 18% *per annum* on any unpaid balance, and for attorneys' fees incurred in connection with recovering any balance due under the invoice. (*See* Pl.'s Exs. C & D). These provisions are enforceable. *See*

---

[3] Defendants' reliance on *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163 (3d Cir. 2010) is unpersuasive. In *Bear Mountain*, the defendant in question worked only 2-3 half days per week and she performed solely clerical tasks. *Id.* at 173-75.

*Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007). Furthermore, in the PACA context, the trust provisions provide that PACA trust assets shall be held by the receiver of the produce in trust for the benefit of the unpaid beneficiary until full payment of the "sums owing in connection with such transactions has been received." 7 U.S.C §499e(c)(2). Courts have held that if there is an enforceable agreement between the parties, then attorneys' fees and pre-judgment interest should be awarded as "sums owing in connection with" the trust transactions. *Coosemans Specialties, Inc.*, 485 F.3d at 709; *see also Country Best v. Christopher Ranch, LLC*, 361 F.3d 629 (11th Cir. 2004); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590, 595 (S.D.N.Y. 1995).

Defendants do not dispute that Plaintiffs' invoices constitute contracts or the enforceability of any of the contract terms, including the attorneys' fees and interest provisions. They also concede Orel's liability for breaching these contracts. (*See* Def.'s Part. Opp., Dkt. 26, at 3). Since these provisions of the invoice are incorporated into the PACA trust liability, the individual liability of M. Yadid and E. Yadid extends to Plaintiffs' contract claim as well. Accordingly, Plaintiffs' motion as to Defendants' liability for breach of contract and Plaintiffs' entitlement to interest at the rate of 18% *per annum* on the unpaid balance and attorneys' fees incurred in connection with recovering any due balance is GRANTED.

### III. Damages Calculation

Defendants object to Plaintiffs' initial damages calculation because it failed to account for Plaintiffs' subsequent collection efforts on Defendants' accounts receivable, some of which were successful. Plaintiffs have since updated the damages calculation to account for an additional $21,628.18 collected on Orel's accounts receivables since filing this action. (*See* Brown Rep. Decl., Dkt. 33, Ex. B). Defendants' objection is thus moot, and the Court will enter judgment on

the damages calculation as modified.

## CONCLUSION

Plaintiffs' motion for summary judgment is GRANTED. Plaintiffs are entitled to judgment against all Defendants, jointly and severally, in the principal amount of $473,268.82 plus accrued interest at the rate of 18% *per annum* and attorneys' fees incurred by Plaintiffs up to and including the date of this Order. The Clerk of the Court is instructed to close the motion at Dkt. 18.

Dated: New York, New York
September 11, 2019

SO ORDERED

PAUL A. CROTTY
United States District Judge